NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

EDWARD LEE, PETITIONER, v. MORRIS FISH, TRADING AS FISH BROS., AND AMERICAN MOTORISTS INSURANCE COMPANY, A CORPORATION, RESPONDENTS.

Decided January 6, 1938.

For the petitioner, *William Fogel* (*David Roskein,* of counsel).

For the respondents, *Stanley V. Phares.*

A dependency claim petition for compensation having heretofore been filed, claiming compensation for dependency and funeral benefits under an act of the legislature commonly referred to as the Workmen's Compensation act; and an answer was duly filed by the respondent denying the material allegations thereof.

\*       \*       \*       \*       \*       \*       \*

There are two issues presented to me for determination. First, did the accident which the petitioner's decedent admittedly sustained on October 22d, 1936, when he fell from an auto truck owned by the respondent as it was proceeding on the public highway in the city of Newark, arise out of and in the course of his employment with the respondent, and secondly, was Edward Lee, father of the decedent employe, a legal dependent within the terms of the Workmen's Compensation act, and if so, was such dependency partial or total.

From the testimony of the various witnesses adduced, it appears that on October 22d, 1936, the petitioner's decedent was in the employ of the respondent as a helper in his business as wholesale grocer, which business was operated on Cornelia street, Newark, New Jersey. On the day in question, at about one A. M., as was his custom, he went upon the truck of his employer preparatory to being taken home after the close of the day's business. The said truck was operated by the respondent's brother, Leonard Fish, who was the manager of the respondent's business. It further appears that the decedent lived on the route between the employer's place of business and the garage where the said truck was nightly stored. I further find from the testimony that it was the custom of the employer, through his brother, Leonard Fish, to call for the decedent regularly on Sundays and take him to the respondent's place of business in order to aid the respondent in opening his business on time. This with the knowledge and acquiescence of the employer over a long period of time. The testimony is clear and convincing that the transportation was furnished by the respondent. I am satisfied that the furnishing of the said transportation by the

employer was grounded in the mutual convenience and advantage of both the employer and employe. They engaged in this practice until the same ripened into custom. It is clear that the furnishing of the said transportation was for the benefit of both parties. I feel that the same comes clearly within the rule established and so well expressed in the cases of *Rubeo* v. *McMullen Co.,* 117 *N. J. L.* 574; 189 *Atl. Rep.* 662; 118 *N. J. L.* 530; 193 *Atl. Rep.* 797; *Salomone* v. *Ansetta,* 60 *N. J. L. J.* 365, and *Alberta Contracting Corp.* v. *Santomassimo,* 107 *N. J. L.* 7; 150 *Atl. Rep.* 830.

"The relation of employer and employe continues while the employe is riding to and from his employer's premises, in a truck used in connection with his employer's work, by direction of his employer, with his knowledge and acquiescence in the continued practice, which was beneficial to both the employer and employe; and an injury sustained while so riding arises out of and in the course of his employment." *Alberta Contracting Corp.* v. *Santomassimo, supra.*

I find as a fact that the decedent's death was the result of an accident which occurred on October 22d, 1936, and which arose out of and in the course of his employment with the respondent.

In determining the question of dependency, its nature and extent, I find as follows: It is admitted that the petitioner's decedent earned a weekly wage of $13. The testimony adduced conclusively shows that the decedent left surviving his mother, Lula Lee, of the age of fifty-three, and his father, Edward Lee, of the same age; that they resided with the decedent at the time of his death, and that Lula Lee, the mother, was ill and infirm at the time of the said accident and died shortly thereafter. With respect to the father, Edward Lee, the testimony is clear that he was unemployed at the time of the said accident and had so been for a number of years prior thereto.

I have had an opportunity to observe the petitioner on the stand. He is suffering from a peculiar skin condition which clearly can account for his lack of employment. The testimony of the father, as well as that of Mollie Lee, is to the

effect that the decedent turned over all his earnings to his father. The decedent was the only member of the family gainfully employed and earning wages. Even these earnings were insufficient to support all the members thereof and consequently additional support was required. This was furnished by a local relief agency. Such aid does not, in my opinion, change the character of the dependency of the father. The relief authorities treated this family of six adults and an ill mother as a unit for relief purposes. Contributions of money, food, rent and other necessities were supplied to the family on that basis. The extension of charity to this family does not destroy the character of the dependency of the father, Edward Lee. The testimony is clear that the decedent turned over all his earnings to his father and the said moneys were used by the father in conjunction with the aid obtained from the relief authorities, for the support of the household.

I therefore find that the petitioner, Edward Lee, is a total dependent under the terms and provisions of the Compensation act of this state, and is therefore entitled to receive compensation for a period of three hundred weeks from the date of the death of Raymond Lee, on October 23d, 1936, at the compensation rate of $10 per week, until the full amount of $3,000 is paid.

\*      \*      \*      \*      \*      \*      \*

JOHN J. STAHL,
*Deputy Commissioner.*