THOMAS, Acting Chief Justice.
The lone question for our solution is whether or not the workman was injured in an accident arising out of and in the course of his employment when at the end of a work day he was struck by an automobile in the manner we will describe. The deputy commissioner decided his injury was compensatory but on review the Full Commission, one commissioner dissenting, adopted a different view and ordered the claim dismissed.
Upon cursory examination it appears to have been well established that the method of transporting the claimant was not only approved but was actually maintained by the employer, but scrutiny of the facts demonstrates that the relationship was much more complicated.
At the outset the petitioner tells us in his brief that the precise situation with which we deal is one of first impression in this State. There are, however, two decisions of this court presently to be examined that treat of allied situations.
It seems to us the crucial question is whether or not the area of employment of the claimant and the consequent risks of the employer had been extended to Axtell’s Garage so that once the employee left there the employer was responsible for injury to him until he was returned.
To understand the question, and the significance of the garage, it is necessary to examine in minute detail the arrangement that existed at the time the claimant was injured. He and one Souder were employed by General Development Company to work in a surveying party. They had been associated in similar employment before. Souder was the “chief" of the crew and in that capacity was furnished a jeep and surveying equipment for which he assumed responsibility. In furtherance of the obligation he took the vehicle and equipment to his home each night. There seems to have been no direct understanding between the claimant and the employer-corporation about the transportation of the claimant to and from the work but a discussion among claimant, Souder and one Whitmore, described as supervisor of field crews for the corporation, resulted in a personal arrangement between the claimant and Souder for the carriage of the claimant to the jobs and back in the jeep. To this situation Whitmore offered no objection.
Carrying out this plan the claimant each morning would drive his personal car to the building known as Axtell’s Garage where he would leave it and meet Souder when he arrived in the jeep, that point being on the direct route from Souder’s home to the job. At the end of the work day the process would be reversed and claimant would be let out at Axtell’s place where he would get his own automobile for the trip to his home.
It is important to remember that the garage was located on the east side of Highway 41, a traffic artery, and that Souder would pick up the claimant on that side of the highway as they went to work. Upon returning at the end of the day the claimant would be discharged at the same place unless the traffic was unusually heavy, as indeed it was the day of the accident and injury to the claimant, in which event the claimant would alight on the opposite side of the highway and go from there to the garage on foot.
On occasion when Souder was ill his wife would take the jeep to the claimant at the garage and he would drive the car to work and back returning it to Mrs. *473 Souder at the garage. She would then take it home.
Evidently the employer-corporation acquiesced in this procedure following its policy to allow its employees to ride in company jeeps so long as it was not necessary to veer from direct routes to and from the jobs.
The course taken on the day of the accident followed this pattern with the exception that work overtime delayed the arrival in the vicinity of the garage until after dark. Souder stopped on the west side of the road and when the claimant undertook to cross it, he was hit by a car bound north,
A study of the question whether or not under these circumstances there was responsibility on the part of the employer for compensation of the claimant brings us immediately to the two decisions of this court on the related subject, mentioned at the outset, i. e., Povia Bros. Farms v. Velez, Fla., 74 So.2d 103, and Jacksonville Coach Company v. Love, Fla., 101 So2d 361.
Before proceeding, however, we turn to analyses of the orders of the deputy and of the Full Commission to ascertain their treatment of the controversy in the light of these cases.
After reciting the facts we have undertaken accurately to detail the deputy opined that “it was the employer’s responsibility to furnish safe transportation to the place where they [sic] had accepted them [employees] as passengers,” further that “it was also the responsibility of the employer to see that they were safely across any highway * * * due to such transportation, and this duty would continue until the claimant had crossed the highway and was out of the line of automobile traffic.” This conclusion, said the deputy, was harmonious with the holdings in the cases just cited. Following this thought it was decided that the claimant was injured in an accident arising out of and in the course of the employment on the theory no doubt that an exception to the “going and coming” rule was developed by the testimony.
As did the Full Commission we construe the deputy’s order to mean that he felt the acquiescence of the employer made the scheme of transportation a part of the contract of employment. The Commission differed with the deputy saying that when the claimant alighted from the jeep he was no longer in the course of his employment as a contrary view would mean that the employer was obligated by the terms of the contract of employment to assure the safe return of the employee “to the point of pickup,” namely, the side of the highway at Axtell’s Garage. This extension of the “going and coming rule” was, the Commission thought, unjustified. The Commission believed the transportation was an “incident” of the employment but that safe conduct all the way, that is across the road, to Axtell’s was no part of the employment contract. In fine, the Commission considered the Povia case and the immediate one distinguishable. So the order was reversed and the claim dismissed.
At first blush, it would appear that if Povia was permitted to recover compensation when he was injured while crossing the road to board a bus to be carried to work, the claimant in the instant case should, by the same token, be awarded compensation when he was injured, much in the same manner as he crossed the road from the jeep to his parked automobile. But the problem is not resolved by simply granting the claimant’s petition on the authority of the Povia case.
Before passing to what we mark the determining aspect of the case we will dispose of the complaint in the cross-petition that the Commission erred in denominating the transportation plan an “incident to the employment contract.” We do not consider the statement, taken from context in the final order, vital nor do we understand it to be deserving of the *474 importance attributed to it. Without any desire to involve ourselves in an excursion into semantics we say that to us the word “incidental” means something' happening along with something else more important, or something secondary. So we accept the designation as putting the transport secondary to the employment contract as distinguished from being a part of it. And in that category do we discern the difference in salient facts between the Povia decision as originally released and as discussed in Jacksonville Coach Co. v. Love, supra.
Plere the carriage of the claimant to the job and back home in the manner we have detailed seems to have been a matter of convenience to the employee as well as the employer. It was not a part of the employment contract. True, it was “incidental” but so was the journey from claimant’s home to the meeting place at Axtell’s. In the Povia case the court recognized as an exception to the “going and coming rule” the provision by the employer of transportation “as a part of the employment contract.” The opinion concludes with the statement that the workman from the time he began to cross the highway to board the truck furnished by the employer was attempting to “fulfill an order of his employer.” In the opinion in the Jacksonville Coach Company case the court commented that in the Povia .case it was noted that the exception to the “going and coming” rule existed when the transportation was provided “as a part of the employment contract” and ' that in Povia it had been reasoned that the invitation to Povia to get on the bus, which he could only do by crossing the highway, amounted to an “order” to do so. (Italics supplied.)
In the facts of that case it was settled that although employees were privileged to use without charge the employer’s buses and the claimant in using one to go to work was injured he could not secure com'pensation because, said the court, the transportation was ■ not a part of the contract, the workman was' not submitted’ to the control of the employer, the employee could use the buses if he wished or get to work some other way.
All these conditions, in our view, applied to the situation in the instant case.
We do not find in the circumstances reason to extend the protection granted the workman in the Povia case to cover the claimant in the present one. Nor do we discover such a diversity between the salient facts in the Jacksonville Coach Company case and the controlling ones here to justify a completely antagonistic ruling.
Our conclusion is that the Commission quite properly ordered the deputy’s decision reversed and the claim dismissed.
ROBERTS, O’CONNELL and HOB-SON (Ret.), JJ., and HEWITT, Circuit Judge, concur.